**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0240n.06
Filed: April 1, 2005

No. 03-1920

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MARK OLDS, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | |
| | ) | **ON APPEAL** FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellee.** | ) | |

**BEFORE: NORRIS, BATCHELDER AND ROGERS, Circuit Judges.**

**PER CURIAM.** Plaintiff Mark Olds appeals from the district court's grant of summary judgment in favor of defendant United Parcel Service, Inc. ("UPS"), in this disability discrimination action under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 ("ADA").[1]

**I.**

The district court set forth the facts of the case in an opinion granting summary judgment to UPS:

> Plaintiff Mark Olds worked as a package delivery driver for Defendant United Parcel Service, Inc. ("UPS") at its St. Joseph, Michigan facility from September 1982 until January 8, 1998.

---

[1] The district court also granted summary judgment is favor of UPS on Olds' claims for retaliation in violation of the ADA and the Michigan Workers Disability Compensation Act. On appeal, Olds does not challenge the decision to grant UPS summary judgment on those claims.

Plaintiff is 52 years old, married, and has three children. He has a high school education and an associate's degree in business. Prior to beginning employment with Defendant, Plaintiff worked at various manual labor jobs including welding, machining auto parts, construction, and carpentry. All parties agree Plaintiff had an excellent employment record while with UPS.

In 1997, Plaintiff was diagnosed with monoclonal gammopathy of undetermined significance, a condition involving an abnormal protein that leads to cancer 20 percent of the time. This diagnosis had no impact on Plaintiff's ability to work. After sustaining a compression fracture in his neck while on the job in January 1998, Defendant was diagnosed with multiple myeloma, a cancer affecting bone marrow. Plaintiff went on short-term disability after sustaining this injury. After undergoing chemotherapy, Plaintiff sought to return to work in May 1998 pursuant to his doctor's approval. Plaintiff was initially under a 25 pound lifting restriction and precluded from doing any kind of repetitive bending or twisting. This was later increased to a 40 pound restriction in January 1999, and the lifting restriction was made permanent in September 1999. Plaintiff was also instructed not to perform certain repetitive activities that might put sudden, excessive force on his bones. Plaintiff underwent a bone marrow transplant in September 2002. He was cleared to work in January 2003, still under a 40 pound lifting restriction.

Plaintiff first inquired about accommodation for his weight restriction in February 1999 and formally sought accommodation in September 1999. Plaintiff sought permission to use a two-wheel dolly to deliver packages over 40 pounds in weight. In October 1999, Plaintiff submitted a written request for Defendant to make this accommodation available to him.[1] Defendant denied Plaintiff's

---

[1]Defendant instructs its drivers to use a two-wheel dolly when delivering packages over 70 pounds and places no restriction on a driver's decision to use a dolly for lesser weight packages. Defendant also recommends use of a dolly when delivering multiple packages and/or envelopes to one location regardless of their individual or cumulative weight. The Court also notes, drivers are allotted a certain amount of time in which to complete their routes based on time studies periodically conducted by Defendant. Use of a dolly generally increases the allotted delivery time by approximately 15 seconds. Such an allotment is granted to account for the time needed

request for accommodation on the basis that it did not find him entitled to one under the Americans with Disabilities Act of 1990 ("ADA"). Defendant also informed Plaintiff he was not qualified to return to work because of his lifting restriction. Plaintiff filed a grievance with respect to Defendant's refusal to let him return to work under a 40 pound lifting restriction. The grievance was appealed to a state panel which upheld UPS's decision as not being in violation of the collective bargaining contract. The panel did not address whether Defendant should provide Plaintiff with any accommodation or whether other positions were available.

After being denied the opportunity to return to his old job as a package delivery driver, Plaintiff bid on a number of openings at the St. Joseph facility, including delivery driver positions, a customer clerk opening, a porter position, and an air shuttle driver job. His application for each was denied on the ground that he was unable to perform the essential job function of being able to lift over 40 pounds regardless of his seniority.

Plaintiff is currently collecting Social Security Disability benefits, for which he applied in January 1998, pursuant to his diagnosis. Immediately after sustaining his injury, Plaintiff also filed a worker's compensation claim that Defendant initially denied. Subsequently, in May 1999, upon review by a Magistrate Judge, Plaintiff was awarded worker's compensation benefits for a closed period from January to October 1998, the time during which Plaintiff's compression fracture was healing. In June 2000, Plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights, which, as far as the Court can determine from the record, recommended referral of the case to conciliation.

Opinion, June 17, 2003 at 1-3 (footnote in original).

The district court granted summary judgment to defendant because it found that plaintiff was

not disabled as defined by the ADA. The court held that Olds did not suffer from an impairment that

substantially limited a major life activity because "a lifting restriction alone does not constitute a

_____

to deliver packages over 70 pounds with a dolly.

disability." Opinion, June 17, 2003, at 5. The court also concluded that Olds was not substantially limited in a major life activity because he did not demonstrate a significant restriction on his ability to obtain employment in a broad range of jobs. In the same vein, the court determined that Olds did not suffer from a record of impairment that substantially limited a major life activity: "At no time, based on the record before the Court, has Plaintiff's physical impairment substantially limited one or more of his major life activities." Opinion, June 17, 2003, at 11. Finally, the district court held that Olds did not suffer from being regarded as having an impairment that substantially limited a major life activity. It determined that UPS did not permit Olds to return to work because of his lifting restriction, and that Olds did not raise a question of fact with respect to whether UPS entertained a misperception about him.

## II.

This court reviews a grant of summary judgment *de novo*. *Motorists Mut. Ins. Co. v. Hammond*, 355 F.3d 593, 596 (6th Cir. 2004). Summary judgment must be granted pursuant to Fed. R. Civ. P. 56(c) if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. All evidence and inferences must be construed in the light most favorable to the non-moving party. *Shah v. Deaconess Hosp.*, 355 F.3d 496, 498 (6th Cir. 2004).

To state a claim under the ADA, a plaintiff must demonstrate:

> (1) that she is a disabled person within the meaning of the Act, (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment decision because of her disability.

*McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997). The parties do not

dispute that Olds suffered an adverse employment action, but do contest the other two elements of

the test.

"Disability" under the ADA means:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). A plaintiff who claims that he is disabled because a condition substantially

limits his ability to engage in the "major life activity" of working must show that he is "significantly

restricted in [his] ability to perform either a class of jobs or a broad range of jobs in various classes

as compared to the average person with comparable training, skills and abilities." *McKay,* 110 F.3d

at 371. (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Olds accordingly can survive summary judgment if

he can demonstrate that he was subject to any one of these three conditions and that he was restricted

in his ability to work in a "class of jobs" or a "broad range of jobs in various classes." *Id.* However,

the "inability to perform a single, particular job does not constitute a substantial limitation in the

major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

We agree with the district court that Olds is not so physically impaired that he is disabled

as defined by the ADA. Olds argues that he has a physical impairment, cancer, which creates a

weight restriction that substantially limits a major life activity: his ability to work. However, as the

district court correctly concluded, the general rule in this circuit is that a weight restriction alone is

not considered a disability under the ADA. Opinion, June 17, 2003, at 5-7 (citing *Gayer v. Cont'l*

*Airlines,* 21 Fed.Appx. 347 (6th Cir. 2001) (unpublished)); *see also McKay,* 110 F.3d at 373

(holding that plaintiff's inability to lift  more than ten pounds would not significantly restrict her

ability to perform a broad range of jobs in various classes).  Olds' lifting restriction prevents him

from working as a delivery driver and from performing other jobs at UPS specifically, but there is

no evidence in the record that it prevents him from engaging in a broad class of jobs.

Similarly, Olds has not raised a genuine issue of material fact that he has a "record of

impairment." "A record of an impairment means an individual has 'a history of, or has been

misclassified as having, a mental or physical impairment that substantially limits one or more major

life activities.'" *MX Group, Inc. v. City of Covington,* 293 F.3d 326, 339 (6th Cir. 2002); (citing 28

C.F.R. § 35.104(3)).  The district court determined that Olds' physical impairments limited his

ability to meet his job requirements, but did not limit one or more major life activities.  We agree

with the district court for the same reasons that led us to conclude that Olds was not disabled as

defined by the ADA.

That said, we depart from the decision in one respect: we hold that Olds has raised a genuine

issue of material fact about whether UPS regarded him as having an impairment.  To succeed in

demonstrating that he is "regarded as having . . . an impairment," a plaintiff must show the

following:

> (1) a covered entity mistakenly believes that a person has a physical
> impairment that substantially limits one or more major life activities,
> or (2) a covered entity mistakenly believes that an actual, nonlimiting
> impairment substantially limits one or more major life activities.  In
> both cases, it is necessary that a covered entity entertain
> misperceptions about the individual—it must believe either that one
> has a substantially limiting impairment that one does not have or that

> one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001) (citing *Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999)). The district court concluded that there was no evidence to indicate that UPS discriminated against Olds based upon a misperception; rather, it concluded that UPS refused him employment based upon an accurate understanding of his limitations—that he could not lift 40 pounds.

However, a former UPS employee testified that a UPS corporate lawyer said that Olds should not be reinstated because he had cancer. Furthermore, the former employee testified that UPS did not want to accommodate Olds because it did not want to rehire him: "we didn't want to come right out and say that because of Mark's condition, his cancerous condition, that he couldn't do the job." The same employee also indicated that UPS changed the lifting requirements of certain positions to avoid accommodating Olds. A reasonable jury could infer that UPS believed that Olds' condition was significantly more disabling than it actually was, and for that reason UPS did not want to reinstate him. Olds has accordingly raised a genuine issue of material fact as to whether UPS regarded him as having an impairment.

Because the district court determined that Olds was not disabled as defined by the ADA, it did not reach the question of whether he was qualified to perform the essential functions of his job. UPS argues that Olds cannot perform the task of lifting up to 70 pounds without assistance, a task defined by UPS as essential. Olds suggests that the weight-lifting requirements are arbitrary because they were changed without regard to job duties to make the lifting requirements "uniform" for all

jobs at the St. Joseph facility.  He also contends that other package delivery drivers with back problems had been given permission to use dolly carts and request customer assistance for limited periods of time.  Accordingly, on remand, the district court will need to determine what the "essential functions" of UPS jobs are and whether Olds reasonably can perform them with an accommodation.

UPS argues that Olds is precluded from demonstrating that he is qualified because an administrative law judge found him entitled to Social Security Disability benefits.  We disagree. Under the Supreme Court's decision in *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 807 (1999)*,* Olds is required to give a "sufficient explanation" as to how he can perform the essential functions of the job, given the Social Security Administration's determination of total disability. However, because the Social Security Administration assesses only what a claimant can do, while the relevant inquiry under the ADA asks what the claimant can do *with or without accommodation*, the only explanation that a plaintiff need provide is that he can perform the work in question *with accommodation*.  As stated by the Supreme Court:

> To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement [to the Social Security Administration], the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Id.*  Because Olds has suggested two accommodations, namely, either a transfer to another position, or permission to use the dolly cart and to request customer assistance with packages over 40 pounds, it appears that he can provide a satisfactory "explanation."

**III.**

The judgment of the district court is **reversed** and the case is **remanded** to the district court

for further proceedings consistent with this opinion.